UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| WENDY BLACK TAIL DEER, individually and as Legal Guardian of E.C.W.L, a minor child; BART BONE SHIRT, individually and as Legal Guardian of A.B.S., a minor child; MARIA SMASHED ICE, individually and as Legal Guardian of T.L.C., a minor child; LUANN MCCLOSKEY, individually and as Legal Guardian of L.M.S.H., a minor child; and ALEX WHITE HAT, individually and as Legal Guardian of W.N.W.H., a minor child;<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | 3:25-CV-03022-CCT<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S PARTIAL MOTION TO DISMISS** |

The United States moves to partially dismiss this action on two grounds: (1) Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction; and (2) Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Docket 9. On March 27, 2026, the Plaintiffs filed their response objecting to the United States' partial motion to dismiss. Docket 24. For the following reasons, this Court grants in part and denies in part the United States' motion.

**BACKGROUND**

On or about October 16, 2021, plaintiffs E.C.W.L., A.B.S., L.M.S.H., T.L.C., and W.N.W.H. were prepared to travel from the St. Francis Indian School (SFIS) with their fellow teammates to a volleyball tournament in White River, South Dakota. Docket 1 ¶ 9. Volleyball coach and SFIS employee Miranda Romero was responsible for transporting the team to the tournament using a school vehicle. *Id.*

A.B.S. and another teammate later reported that when Romero arrived at the school in her personal vehicle, she appeared tired and her car was filled with beer cans. *Id.* ¶ 10. After Romero arrived, the girls headed to the school's bus garage, and Romero told them to board a white Suburban. *Id.* While they were still in the garage, the girls decided to check in with Romero because fifteen minutes had passed without hearing from her. *Id.* The girls found Romero crying, and she told the girls that she was canceling the tournament "because she couldn't go by herself." *Id.* Rather than have the girls' families pick them up from the school, Romero insisted on driving the girls home. *Id.*

While she was on the third or fourth stop driving the girls home in the white Suburban, Romero passed out at the steering wheel. *Id.* ¶ 11. After one of the girls woke her up, Romero sped down a highway hill, at which point the girls pled for Romero to slow down. *Id.* Romero slowed down and continued to drive the Suburban. *Id.* ¶ 11.

As she was dropping off a couple more girls at the fairgrounds, the girls "had to get Romero's attention and tell her to stop" the Suburban because she

"was trying to pass out again" and the Suburban started rolling. *Id.* ¶ 12. Romero "came to[,]" and as she drove the Suburban away from the fairgrounds, she began driving on the wrong side of the road and nearly collided head-on with an oncoming vehicle. *Id.* ¶ 12. E.C.W.L., A.B.S., L.M.S.H., T.L.C., and W.N.W.H. were still in the Suburban and far from their homes. *Id.* They convinced Romero to stop the Suburban, and one of the girls, A.B.S., who was not insured and had little driving experience, drove some of the remaining girls home. *Id.* ¶¶ 12–13. While A.B.S. drove the Suburban, Romero "was passed out in the front seat[.]" *Id.* ¶ 13.

Plaintiff Wendy Black Tail Deer, mother of E.C.W.L., was waiting for her daughter to come home when she spotted the Suburban and followed it to E.C.W.L.'s grandmother's house. *Id.* ¶ 14. When Black Tail Deer arrived at E.C.W.L.'s grandmother's house, E.C.W.L. had already been dropped off and the Suburban had left. *Id.* E.C.W.L. explained to Black Tail Deer that Romero was drunk and passed out in the front seat of the Suburban and that one of her teammates was driving the rest of the girls home. *Id.* This prompted Black Tail Deer to call the SFIS and attempt to track down the Suburban using her own vehicle. *Id.* ¶¶ 14–15. Black Tail Deer eventually found the Suburban and "pulled in front of them to stop them." *Id.* ¶ 16. Romero was unconscious in the front seat, and "wouldn't move" when Black Tail Deer shook her and called out her name. *Id.* ¶ 17. Ultimately, Black Tail Deer returned the Suburban to the SFIS bus garage, and Black Tail Deer drove the rest of the girls home. *Id.*

On October 16, 2023, the United States Department of the Interior (DOI) received a submission that included six Standard Form 95s (SF-95s) from Plaintiffs' counsel, Robin Zephier, for personal injury claims under the Federal Tort Claims Act (FTCA). Docket 10 at 3; *see* Docket 1-1. On April 22, 2024, the DOI responded to Zephier with ten letters denying all claims, indicating that after conducting a complete review of the claim file, the agency could not determine "the United States [was] liable under the FTCA or South Dakota law." Docket 1–2. On March 17, 2025, the agency again denied all claims despite Zephier's request for reconsideration. *Id.*

Believing they had exhausted all administrative remedies, plaintiffs Wendy Black Tail Deer, Bart Bone Shirt, Maria Smashed Ice, Luann McCloskey, and Alex White Hat filed a complaint against the United States of America on September 11, 2025, in their individual capacities and as legal guardians of the respective minor children. Docket 1 (Black Tail Deer as legal guardian of E.C.W.L.; Bone Shirt as legal guardian of A.B.S.; Smashed Ice as legal guardian of T.L.C.; McCloskey as legal guardian of L.M.S.H.; and White Hat as legal guardian of W.N.W.H.). The complaint denotes that suit is brought under the FTCA, and it alleges this Court has jurisdiction to consider the Plaintiffs' claims under 28 U.S.C. § 1346(b). *Id.* ¶¶ 1–5. The Plaintiffs seek damages under five counts: (1) negligence, (2) bystander claims, (3) negligent training, (4) negligent supervision, and (5) negligent hiring. *Id.* ¶¶ 9–33.

On December 23, 2025, the United States filed a partial motion to dismiss certain claims made by the Plaintiffs for lack of jurisdiction and failure

to state a claim. Docket 9; Docket 10. On March 27, 2026, the Plaintiffs filed their response objecting to the United States' motion. Docket 24. Finally, on April 10, 2026, the United States filed a reply brief in support of its partial motion to dismiss. Docket 25.

## DISCUSSION

### I. Plaintiffs' request to dismiss certain claims

The Plaintiffs indicate in their response to the United States' partial motion to dismiss that they seek to voluntarily dismiss their claims of negligent training (count three), supervision (count four), and hiring (count five). Docket 24 at 10. They also wish to voluntarily dismiss the individual bystander claims of adult plaintiffs Bone Shirt, Smashed Ice, McCloskey, and White Hat (included in count two). *Id.* The United States did not object to either request. Docket 25 at 1.

Although the Plaintiffs did not file a separate motion to dismiss those claims, the Court will consider their request, and in doing so, must first determine whether the request should be deemed a motion for "voluntary dismissal under Federal Rule of Civil Procedure 41(a), or [ ] a motion to amend under Federal Rule of Civil Procedure 15." *Planned Parenthood Minnesota, N.D. v. Daugaard*, 946 F. Supp. 2d 913, 917 (D.S.D. 2013). "Federal Rule of Civil Procedure 41(a) states that parties may voluntarily dismiss 'an action,' but says nothing about individual claims within an action." *Id.* at 918 (citing Fed. R. Civ. P. 41(a)(2)). Therefore, a request to dismiss less than all counts in a multi-count complaint "is more properly viewed as a Rule 15 amendment to the

complaint." *Id.* (alteration in original) (quoting *Gronholz v. Sears, Roebuck & Co.*, 836 F.2d 515, 518 (Fed. Cir. 1987). This Court finds that the Plaintiffs' request for dismissal is more properly viewed as a motion to amend because it pertains only to "specific claim[s] and not the entire action[.]" *See id.*

Next, the Court will decide whether the amendments should be permitted. "After the time period for amending pleadings as a matter of course has passed, Rule 15 provides that 'a party may amend its pleadings only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.'" *Id.* (quoting Fed. R. Civ. P. 15(a)(2)). "Leave to amend should be granted unless 'there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.'" *Id.* (quoting *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008)).

Here, there are no compelling reasons to deny the Plaintiffs leave to amend, and the United States does not object to the Plaintiffs' request to dismiss certain claims. Because leave to amend should be freely granted absent reasons to the contrary, the Court grants the Plaintiffs leave under Rule 15 to amend their complaint to dismiss counts three through five and the individual bystander claims of adult plaintiffs Bone Shirt, Smashed Ice, McCloskey, and White Hat included in count two. After that amendment, the remaining claims are the negligence claims of all plaintiffs in count one, and the bystander claim of Wendy Black Tail Deer in count two.

## II. Partial motion to dismiss under Rule 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction

The Plaintiffs allege in their complaint that they bring this lawsuit against the United States pursuant to the FTCA. The United States argues that this Court has authority under Rules 12(b)(1) and 12(h)(3) to dismiss the negligence claims described in count one with respect to plaintiffs White Hat, Smashed Ice, McCloskey, Bone Shirt, A.B.S., E.C.W.L., and W.N.W.H. for their failure to properly present their claims to the DOI under 28 U.S.C. §§ 2401(b) and 2675(a). Docket 10 at 8–13. It does not seek to dismiss the count one negligence claims of plaintiffs Black Tail Deer, L.M.S.H., and T.L.C. *Id.* at 13 ("Plaintiffs Black Tail Deer, L.M.S.H., and T.L.C. submitted sufficient evidence of authority to present a claim at this stage in litigation.").

In response, the Plaintiffs first assert that equitable estoppel bars the United States from arguing that their claims in count one were improperly presented because none of the denial letters they received from the DOI were explicitly based on this argument. Docket 24 at 4; *see* Docket 1-2. This Court disagrees. "Preclusion does not apply where, as here, a party must administratively exhaust her claim before filing suit in court." *Rollo-Carlson as Tr. for Flackus-Carlson v. United States*, 971 F.3d 768, 771 (8th Cir. 2020) (holding that the Department of Veteran Affairs had no duty to notify the plaintiff that her FTCA claim was improperly presented or deficient). Thus, the United States is not estopped from moving to dismiss the Plaintiffs' claims.

**A. Legal standard**

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction." *Healy v. Miller*, 4:24-CV-04053-RAL, 2024 WL 3823097, at *2 (D.S.D. Aug. 14, 2024). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "A Rule 12(h)(3) motion to dismiss is evaluated under the same standards as a motion to dismiss pursuant to Rule 12(b)(1)." *Gesinger v. Burwell*, 210 F. Supp. 3d 1177, 1186 (D.S.D. 2016) (citation omitted).

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As a threshold inquiry, whether this Court has the power to hear the Plaintiffs' case must be decided from the outset. *See Crow Creek Sioux Tribe v. Bureau of Indian Affs.*, 463 F. Supp. 2d 964, 967 (D.S.D. 2006). "A party challenging subject matter jurisdiction under Rule 12(b)(1) must attack either the facial or factual basis for jurisdiction." *Middlebrooks v. United States*, 8 F. Supp. 3d 1169, 1173 (D.S.D. 2014). While a challenge can be either facial or factual in nature, "[t]he burden of proving subject matter jurisdiction falls on the plaintiff." *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citing *Nucor Corp. v. Neb. Pub. Power Dist.*, 891 F.2d 1343, 1346 (8th Cir. 1989)).

A factual challenge, "occurs when the face of the complaint 'is formally sufficient,' but the defendant argues that 'there is in fact no subject-matter jurisdiction.'" *Ngam v. Kludt*, No. 1:24-CV-01025-ECS, 2025 WL 2636587, at *3

(D.S.D. Sept. 12, 2025) (citation omitted). "A facial challenge requires the court to examine the complaint and determine if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction, and the nonmoving party receives the same protections as it would if defending a motion to dismiss under Rule 12(b)(6)." *Middlebrooks*, 8 F. Supp. 3d at 1173.

Because the United States contends that Plaintiffs failed to properly present their negligence claims in count one as required by 28 U.S.C. § 2675(a) and 28 C.F.R. § 14.2(a), it argues that the Court lacks subject matter jurisdiction. It does not challenge the face of the Plaintiffs' complaint. Therefore, the Court views the United States' challenge as factual.

Because this challenge is factual in nature, this Court "is not restricted to reviewing the face of the pleadings[.]" *Walsh v. Del Toro*, No. 4:24-CV-04018-CCT, 2025 WL 102184, at *4 (D.S.D. Jan. 15, 2025). Moreover, it "need not view the evidence in the light most favorable to the non-moving party." *Healy*, 2024 WL 3823097, at *2. Instead, "[b]ecause at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Therefore, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

### B. Negligence claims of adult plaintiffs White Hat, Smashed Ice, McCloskey, and Bone Shirt under the FTCA (Count One)

The United States first argues that plaintiffs Bone Shirt, White Hat, McCloskey, and Smashed Ice failed to properly present their FTCA claims because their attorney, Robin Zephier, failed to provide individual representation agreements demonstrating that he had the authority as their attorney to present their FTCA claims. Docket 10 at 12. The Plaintiffs counter that Zephier provided enough evidence of his authority to act on their behalf as their legal representative. Docket 24 at 13–15. Their evidence includes: (1) certified claim letters sent to the DOI, "each containing the requisite SF 95 forms for the Plaintiff parents/guardians and their respective children/wards[,]" (2) statements in these letters and in the SF-95s themselves that Zephier was the Plaintiffs' legal representative, and (3) a cover letter signed by Zephier on his firm's letterhead, referencing the FTCA claims of adult plaintiffs Bone Shirt, White Hat, McCloskey, and Smashed Ice as his clients. *Id.* at 11, 13–15.

"The [FTCA] is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813 (1976). "Federal courts only have jurisdiction over FTCA claims that are first presented through an administrative claims process." *Walsh*, 2025 WL 102184, at *10 (citation omitted). "An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or

death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first *presented* the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing[.]" 28 U.S.C. § 2675(a) (emphasis added). "A tort claim against the United States shall be forever barred unless it is *presented* in writing to the appropriate Federal agency within two years after such claim accrues[.]" 28 U.S.C. § 2401(b) (emphasis added).

Under 28 U.S.C. §§ 2401(b) and 2675, a claim is deemed properly "presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative." 28 C.F.R. § 14.2(a). For purposes of Rule 12(b)(1), the Eighth Circuit has "held that compliance with § 2675(a)'s presentment requirement is a jurisdictional precondition to filing an FTCA suit in federal district court." *Mader v. United States*, 654 F.3d 794, 805 (8th Cir. 2011) (citing *Allen v. United States*, 590 F.3d 541, 544 (8th Cir. 2009)). Therefore, "[i]f representatives fail to present evidence of authority in a claim, the United States' immunity from suit is undisturbed and a court is without

jurisdiction." *Sleighter v. United States*, No. 5:24-CV-05014-RAL, 2025 WL 238880, at *4 (D.S.D. Jan. 17, 2025).

Here, the issue is whether the Zephier presented sufficient evidence to the DOI showing his authority to act as the legal representative for plaintiffs White Hat, Smashed Ice, McCloskey, and Bone Shirt. "[T]he attorney of a claimant is a representative of the claimant and must comply with the evidence of authority requirement." *Id.* However, "[t]he Eighth Circuit has not given specific examples of what an attorney must do to prove their authority to file an administrative claim for a client." *Sleighter* 2025 WL 238880, at *4. In one case, it "simply held that providing no information at all of authority was insufficient." *Id.* (citing *Puetz*, 2024 WL 1739442, at *2). However, in *Sleighter*, the district court analyzed governing case law and concluded that "an attorney must make some minimal showing that they are in fact acting as an attorney for the claimant." *Id.* at *5. Therefore, this Court "looks to South Dakota law to determine whether a representative has authority to present a claim[.]" *Id.*; *see Mader*, 2024 WL 1739442, at *2 (explaining "that a properly 'presented' claim under § 2675(a) must include evidence of a representative's authority to act on behalf of the claim's beneficiaries under state law").

"[L]ike most jurisdictions, South Dakota law has long presumed that an attorney appearing on behalf of a client is authorized to do so." *Id.* (citing *Anderson v. Hultman*, 80 N.W. 165, 166 (S.D. 1899)); *Noyes v. Belding*, 59 N.W. 1069, 1075 (S.D. 1894) ("[T]he law presumes, in the absence of evidence, that an attorney at law, who has acted as such in a matter within the scope of his

professional duties, was employed and authorized to so act.”). Moreover, “[a]n attorney and counselor at law has power to execute in the name of his client a bond or other written instrument necessary and proper for the prosecution of an action or proceeding about to be or already commenced[.]” SDCL § 16-18-9. Under South Dakota law, therefore, “an attorney, acting as a representative of a claim’s beneficiaries, need only make some minimal showing that they are in fact acting as the beneficiaries’ attorney” to properly present a claim under § 2675(a). *Sleighter*, 2025 WL 238880, at *5.

In *Sleighter*, the court found that the Sleighters’ FTCA claims were properly presented by their attorney because their attorney had mailed the plaintiffs’ FTCA claims to the DOI “in an envelope designating his firm and ‘[t]he mailing contained two SF95s and a letter written and signed by [the attorney] on [firm letterhead].’” *Id.* The court explained that “[t]he letter communicates that the signer of the letter [ ] was an attorney because his name was included in the letterhead,” and noted the presumption under South Dakota law “that an attorney appearing on behalf of a client has the authority to do so.” *Id.*

Here, Zephier has made the necessary minimal showing of authority. He mailed the Plaintiffs’ FTCA claims to the DOI on October 13, 2023. Docket 1 ¶ 22; *see* Docket 23-31; Docket 1-1. The mailing contained six SF-95s. Docket 23-31. The first SF-95, identifying E.C.W.L. as the claimant, was signed in box 13a as “Robin Zephier as Atty/Rep. for Wendy Black Tail Deer/[E.W.L.]” Docket 1-1 at 1. The second SF-95, identifying Black Tail Deer as the claimant, was

also signed in box 13a as "Robin Zephier as Atty/Rep. for Wendy Black Tail Deer/[E.W.L.]" *Id.* at 9. The third SF-95 was signed in box 13a as "Robin Zephier as Atty/Rep. for Bart Boneshirt – [A.B.S.]" *Id.* at 31. The fourth SF-95 was signed in box 13a as "Robin Zephier as Atty/Rep. for LuAnn McCloskey – [L.M.S.H.]" *Id.* at 48. The fifth SF-95 was signed in box 13a as "Robin Zephier as Atty/Rep. for Marie Smashed Ice – [T.L.C.]" *Id.* at 69. The sixth and final SF-95 was signed in box 13a as "Robin Zephier as Atty/Rep. for Alexander White Hat – [W.N.W.H.]" *Id.* at 88.

The mailing also contained a cover letter. Docket 23-31. As in *Sleighter*, this cover letter identified the contents of the mailing and was signed by Zephier. Docket 23-31. The letter utilized Zephier's law firm's letterhead, including in capital letters at the top "Zephier & Lafleur, P.C.[,]" provided the law firm's mailing address, and listed the names of each of the law firm's attorneys, including Robin L. Zephier. *Id.* The United States' partial motion to dismiss "ignore[s] Zephier's letter that was submitted along with the [six] SF-95 forms." *Sleighter*, 2025 WL 238880, at *5.

In *Sleighter*, the Court found under nearly identical facts that such a letter was "quite obviously sent by an attorney[,]" and it "communicate[d] that the signer of the letter, Robin Zephier, [was] an attorney because his name [was] included in the letterhead." *Id.* (citations omitted). Here, the cover letter and the six SF-95s identify Zephier as the legal representative of adult plaintiffs Bone Shirt, Black Tail Deer, White Hat, McCloskey, and Smashed Ice. *See* Docket 1-1; Docket 23-31. Given the "presumption that an attorney appearing

on behalf of a client has the authority to do so[,]" Zephier made the required minimal showing to the DOI that he was acting as these plaintiffs' attorney. *See Sleighter*, 2025 WL 238880, at *5 (citing *Anderson*, 80 N.W. at 166). Therefore, he provided sufficient evidence demonstrating his authority to act on behalf of these plaintiffs under South Dakota law.

The United States argues next that plaintiffs Bone Shirt, White Hat, McCloskey, and Smashed Ice failed to properly present their FTCA claims because they each neglected to submit separate SF-95s to the DOI naming themselves as individual claimants. Docket 10 at 12.

When an FTCA action includes multiple claimants, "each claimant must 'individually satisfy the jurisdictional prerequisite of filing a proper claim.'" *Dalrymple v. United States*, 460 F.3d 1318, 1325 (11th Cir. 2006) (quoting *Haceesa v. United States*, 309 F.3d 722, 734 (10th Cir. 2002)); *Sleighter*, 2025 WL 238880, at *6 (citing *Dalrymple*, 460 F.3d at 1325). "Multiple claimants may submit one [SF95] form containing all claims, but only under certain circumstances." *Sleighter*, 2025 WL 238880, at *6 (quoting *Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1201 (11th Cir. 2008)). "At a minimum, each individual claimant should be listed on the SF95." *Id.* (citing *Campbell v. United States*, 795 F. Supp. 1118, 1121 (N.D. Ga. 1990) (finding that a single SF-95 presented the claims of the mother, father, and minor child because it specifically named the husband and child as "claimants," described each claim, and the government treated all three as claimants during the settlement process)). Therefore, if the SF-95s received by the DOI identified plaintiffs Bone

Shirt, White Hat, McCloskey, and Smashed Ice as individual claimants, they each presented their claim. This Court finds they were in fact identified as individual claimants in the SF-95s received by the DOI.

Here, in box 2 of the first SF-95, the claimant is listed as "Wendy Black Tail Deer on behalf of [E.C.W.L.]" Docket 1-1 at 1. In box 2 of the second form, Black Tail Deer is listed individually as the claimant. *Id.* at 9. In box 2 of the third form, the claimant is listed as "Bart Boneshirt on behalf of [A.B.S.]" *Id.* at 31. Bone Shirt is referred to as an individual claimant in Zephier's signature as the representative and in the attachment for box 8, which is the place in the SF-95 where the claimant provides the basis for his or her claim. *Id.* at 35.

In box 2 of the fourth form, the claimant is listed as "LuAnn McCloskey on behalf of [L.M.S.H.]" *Id.* at 48. McCloskey is referred to as an individual claimant in Zephier's signature as the representative and in the attachment for box 8. *Id.* at 50, 52. In box 2 of the fifth form, the claimant is listed as "Marie Smashed Ice on behalf of [T.L.C.]" *Id.* at 69. Smashed Ice is referred to as an individual claimant in Zephier's signature as the representative and in the attachment for box 8. *Id.* at 71, 73. Finally, in box 2 of the sixth form, the claimant is listed as "Alexander White Hat on behalf of [W.N.W.H.]" *Id.* at 88. White Hat is referred to as an individual claimant in Zephier's signature as the representative and in the attachment for box 8. *Id.* at 90, 92.

Bone Shirt, White Hat, McCloskey, and Smashed Ice are described as claimants in their claims in their respective attachments for box 8. *Id.* at 35, 50, 52, 71, 73, 90, 92. Moreover, the DOI treated all four as individual

claimants in its denial letters. Docket 1-2 at 9, 13, 17, 23, 25, 29, 35. Because these four plaintiffs were named as claimants and described their claims in the SF-95s, and the DOI treated them as claimants, they satisfied this presentment requirement. *See Campbell*, 795 F. Supp. at 1121 ("[I]n the present situation, [Plaintiff] was named as a claimant on the face of the claim form, and the attachment described his claim . . . . Further, the government treated him as a claimant throughout the settlement process.").

Zephier provided evidence to demonstrate he had authority to act on behalf of the adult plaintiffs under South Dakota law. Adult plaintiffs Bone Shirt, White Hat, McCloskey, and Smashed Ice were also identified as claimants in the SF-95s received by the DOI. Thus, the United States' arguments for dismissing the negligence claims of Bone Shirt, White Hat, McCloskey, and Smashed Ice fail.

**C. Negligence claims of minor plaintiffs A.B.S., E.C.W.L., and W.N.W.H. under the FTCA (Count One)**

The United States argues specifically that this Court lacks jurisdiction over claims made on behalf of minor plaintiffs A.B.S., E.C.W.L., and W.N.W.H. because the three court orders submitted with their SF-95s failed to "establish guardianship or conservatorship over the minors as required by South Dakota law." Docket 10 at 12; *see* Docket 1-1. Minor plaintiffs E.C.W.L., A.B.S., L.M.S.H., T.L.C., and W.N.W.H. contend in their response that the submission of their SF-95s to the DOI "self-authenticate[]" the adult plaintiffs' authority to present claims on their behalf and that no additional evidence of such authority is required under 28 C.F.R. § 14.3. Docket 24 at 11–12. Should this

argument fail, these plaintiffs offer as an alternative that Zephier provided enough evidence of his authority to act on their behalf as their legal representative. *Id.* at 13–15.

As explained above, this Court looks to South Dakota law to determine whether the adult plaintiffs have representative authority to present a claim on behalf of their respective children. *See Sleighter* 2025 WL 238880, at *4. Under South Dakota law, "[a] minor may enforce his rights by civil action, or other legal proceedings, in the same manner as a person of full age. However, a guardian or conservator must be appointed to conduct the same." SDCL § 26-1-3. In *Colombe v. United States*, the court held that neither Colombe, as the natural mother of her minor child, nor her attorney, "had authority to bring a claim [under the FTCA] on behalf of [her child] until Colombe was granted guardianship[.]" No. 5:24-CV-05069-ECS, 2025 WL 3063285, at *5 (D.S.D. Nov. 3, 2025) (citing SDCL § 26-1-3). Colombe was only permitted to proceed with her claim because she later mailed a copy of her court appointment as guardian of her minor child to the DOI, satisfying her jurisdictional presentment requirement before suing in federal court. *Id.*

For minor plaintiff E.C.W.L., Zephier included with the SF-95 an "Order Modifying Custody Order" dated October 26, 2017, from the Rosebud Sioux Tribal Court. Docket 1-1 at 18–19. The order granted sole "legal and physical custody" of E.C.W.L. to Black Tail Deer; however, the order did not appoint Black Tail Deer as E.C.W.L.'s guardian or conservator. *Id.* at 19.

Likewise, for A.B.S., Zephier included a "Final Dispositional Order" dated November 9, 2010, from the Rosebud Sioux Tribal Court. *Id.* at 39. While the order awarded Bone Shirt "full legal and physical custody" of A.B.S., he was not appointed as A.B.S.'s guardian or conservator in the order. *Id.*

Finally, for W.N.W.H., Zephier included an "Amended Order Establishing Paternity, Custody, and Child Support" dated June 28, 2016, from the Rosebud Sioux Tribal Court. *Id.* at 96–98. The order did not appoint White Hat as W.N.W.H.'s guardian or conservator. *Id.*

Under South Dakota law, evidence of guardianship is needed to determine whether Bone Shirt, Black Tail Deer, and White Hat had the requisite authority to present claims on behalf of their minor children, A.B.S., E.C.W.L., and W.N.W.H., respectively. *See* SDCL § 26-1-3; *Mader*, 654 F.3d at 803. Further, while Zephier has established his authority to represent the minor plaintiffs A.B.S., E.C.W.L., and W.N.W.H., he has not submitted evidence of his authority to bring suit under the FTCA on behalf of these minor plaintiffs. *See Colombe*, 2025 WL 3063285, at *4 (noting that a fully executed representation agreement does not establish authority to bring suit on the minor's behalf). Without the required evidence, neither Bone Shirt, Black Tail Deer, White Hat nor Zephier had authority to bring the FTCA claims of A.B.S., E.C.W.L., and W.N.W.H. Therefore, minor plaintiffs A.B.S., E.C.W.L., and W.N.W.H. failed to properly present their FTCA claims, and this Court lacks jurisdiction to hear them.

## III. Failure to state a claim

The United States also argues that the bystander claim asserted by Black Tail Deer should be dismissed under Rule 12(b)(6) for failure to state a claim for which relief can be granted. Docket 10 at 17. Black Tail Deer objects, contending she was in the zone of danger when the incident occurred and that she was "emotionally and physically shocked by the incident[.]" Docket 24 at 15–16.

### A. Legal standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A court assessing such a motion must accept all factual allegations in the complaint as true and draw all inferences in favor of the nonmovant." *Colombe v. United States*, No. 4:24-CV-5069-LLP, 2025 WL 2166908, at *5 (D.S.D. July 30, 2025) (citing *Blankenship v. USA Truck*, Inc., 601 F.3d 852, 853 (8th Cir. 2010)). Courts consider plausibility by "draw[ing] on [their own] judicial experience and common sense." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (first alteration in original) (quoting *Iqbal*, 556 U.S. at 679). Also, courts must "review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." *Id.* (*quoting Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)).

**B. Black Tail Deer's bystander claim**

Black Tail Deer argues her bystander claim withstands the United States' motion to dismiss because she was present while E.C.W.L. was inside the moving Suburban before it ultimately stopped and because she suffered emotional and physical shock as a result. Docket 24 at 15–16; *see* Docket 1 ¶¶ 27–28. The United States acknowledges that Black Tail Deer has a close relationship with E.C.W.L. and was potentially within the zone of danger created by Romero's acts. Docket 10 at 18. It nevertheless argues that Black Tail Deer cannot bring a bystander claim because E.C.W.L. was never physically injured and, therefore, did not suffer a sufficiently serious injury. *Id.*; Docket 25 at 8–9. Furthermore, the United States contends that there is no evidence to support that Black Tail Deer herself experienced the physical manifestations required to bring a bystander claim. Docket 25 at 9.

"Under § 2672, a federal agency may only settle or compromise an FTCA claim 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with [applicable state law].'" *Mader*, 654 F.3d at 801 (alteration in original) (citation omitted). Therefore, this Court looks to the law of South Dakota to determine whether Black Tail Deer provided sufficient factual matter in her complaint to bring a facially plausible bystander claim.

"South Dakota law recognizes a bystander's claim for negligent infliction of emotional distress[.]" *Hansen v. Shields*, No. CIV. 18-5041-JLV, 2020 WL 4346961, at *3 (D.S.D. July 29, 2020) (quoting *Nielson v. AT & T Corp.*, 597

N.W.2d 434, 442 (S.D. 1999)). The South Dakota Supreme Court first recognized a bystander's claim for negligent infliction of emotional distress in *Nielson*, 597 N.W.2d at 440. It held that to successfully bring a bystander claim under South Dakota law, the claim must be "caused by contemporaneous observation of the *serious injury or death* of a third party with whom the bystander has a close relationship[,]" and "[t]he bystander must be within the zone of danger." *Id.* at 442 (emphasis added). "However, the emotional distress suffered may be caused by fear for the third person and need not be caused by the bystander's fear for his or her own safety." *Id.* Finally, "[t]he negligently inflicted emotional distress must be accompanied with physical manifestations.'" *Id.*

Here, the Court focuses on the requirement that serious injury or death be contemporaneously observed. In its holding in *Nielson*, the South Dakota Supreme Court did not define the term "serious injury[.]" *Id.* at 442. Rather, it appears to have left that term to be defined on a "case by case basis" or by the state legislature. *Id.* at 442 n.3 ("This holding is sufficient for the facts of this case. We leave all collateral questions for the development of the law on a case by case basis, or, the legislature, if they should so choose.").

Since *Nielson*, neither the South Dakota Supreme Court nor state legislature has addressed what is required to show "serious injury." However, the South Dakota Supreme Court did reference case law from other jurisdictions when it first recognized a bystander's claim for negligent infliction of emotional distress. *See id.* at 441–42. In particular, the court cited three

cases where the injury a third party must suffer was described as either a "serious injury" or "serious bodily injury." *See Barnhill v. Davis*, 300 N.W.2d 104, 108 (Iowa 1981); *James v. Lieb*, 375 N.W.2d 109, 116 (Neb. 1985); *Gates v. Richardson*, 719 P.2d 193, 199 (Wyo. 1986).

Beginning with *Barnhill*, the Iowa Supreme Court recognized a bystander's claim, holding that "a reasonable person in the position of the bystander must at least have reason to believe, and the bystander must believe, that the direct victim of the accident would be *seriously injured* or killed[.]" 300 N.W.2d at 108 (emphasis added). The Iowa Supreme Court defined "serious injury" as a "bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.*

Next, in *James v. Lieb*, the Nebraska Supreme Court recognized a bystander's claim and described a "serious injury" as one that elicits "profound grief, fright, and shock" from the bystander as opposed to the "emotions of sorrow and anxiety" triggered by "minor injuries[.]" 375 N.W.2d at 116. However, "Nebraska does not require contemporaneous observance of the accident or injury." *Nielson*, 597 N.W.2d at 442.

Finally, in *Gates v. Richardson*, the Wyoming Supreme Court described the shock caused by witnessing a third party's "serious bodily injury" as follows:

> It is more than the shock one suffers when he learns of the death or injury of a child, sibling or parent over the phone, from a witness, or at the hospital. It is more than bad news. The kind of shock the

> tort requires is the result of the immediate aftermath of an accident. It may be the crushed body, the bleeding, the cries of pain, and, in some cases, the dying words which are really a continuation of the event. The immediate aftermath may be more shocking than the actual impact.

719 P.2d at 199. The Wyoming Supreme Court then defined "serious bodily injury" as a "bodily injury which creates a substantial risk of death or which causes miscarriage, severe disfigurement or protracted loss or impairment of the function of any bodily member or organ." *Id.* (citation omitted).

These three cases cited by the South Dakota Supreme Court reflect that "serious injury" to support a bystander claim contemplates either that the victim suffers a serious life threatening or life altering, bodily injury or at least an injury so severe that it elicits profound shock from the bystander rather than mere sorrow or anxiety. Therefore, although the South Dakota Supreme Court has not yet defined "serious injury," this Court predicts based on the reference to these cases in *Nielson*, that the South Dakota Supreme Court would require a claimant to show that the victim suffered a serious life threatening or life altering, bodily injury or at least an injury so severe that it elicits profound shock from the bystander. *See Rodriguez v. Vanlperen*, 736 F. Supp. 3d 699, 732 (D.S.D. 2024) (explaining that "[w]ithout controlling authority," the federal court must attempt to predict how the South Dakota Supreme Court would decide, using "'relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data'" (citation omitted)).

Here, Black Tail Deer alleged in her complaint that she suffered "negligent infliction of emotional distress" upon "witnessing . . . [E.C.W.L.] in

*imminent and serious danger* by being driven by [Romero] who was intoxicated." Docket 1 ¶ 27 (emphasis added). However, she never alleged that E.C.W.L. suffered bodily injury from Romero's dangerous conduct or that she witnessed her daughter suffer some serious injury. While she alleges generally that she suffered "immediate and permanent, manifestation and impact, physically and emotionally, of the resulting trauma and anxiety of having to witness these horrifying events[,]" the complaint does not contain facts supporting that these horrifying events rise to the level of "serious injury" required to bring a bystander claim. Further, while Black Tail Deer alleges in the complaint that she was anxious, scared, and frustrated after learning her daughter's life had been in danger, she does not assert in the complaint that E.C.W.L. was at any point physically harmed or that E.C.W.L.'s injuries were serious enough to provoke the profound shock necessary for Black Tail Deer to bring a plausible bystander claim.

After considering the facts alleged in her complaint, this Court finds that Black Tail Deer failed to furnish sufficient factual matter to bring a plausible claim for relief. Therefore, the United States' motion to dismiss Black Tail Deer's bystander claim is granted.

**ORDER**

Based on all the reasons expressed herein, it is hereby

ORDERED that by leave of the Court counts three through five and the individual bystander claims in count two of adult plaintiffs Bone Shirt, Smashed Ice, McCloskey, and White Hat, Docket 1, are dismissed. It is further

ORDERED that the United States' partial motion to dismiss, Docket 9, is granted in part and denied in part; therefore, count one negligence claims of minor plaintiffs A.B.S., E.C.W.L., and W.N.W.H., and count two bystander claim of Black Tail Deer, Docket 1, are dismissed. The remaining counts include count one negligence claims of the adult plaintiffs Black Tail Deer, Bone Shirt, Smashed Ice, McCloskey, and White Hat, as well as count one negligence claims for the minor plaintiffs L.M.S.H. and T.L.C.

Dated September 14, 2026.

BY THE COURT:

/s/ *Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE